**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAMON VASQUEZ, | : | NO.  5:20-cv-05116-JMG |
| Plaintiff | : | |
| | : | (Honorable John M. Gallagher) |
| v. | : | |
| | : | *Electronically Filed* |
| BERKS COUNTY, CHRISTIAN | : | |
| LEINBACH, KEVIN BARNHARDT, | : | JURY TRIAL DEMANDED |
| MARK SCOTT, JOHN ADAMS, SCOTT | : | |
| LASH, ERIC WEKNECT, S. GRAFFIUS, | : | |
| C. SADLER, JANINE QUIGLEY, | : | |
| JEFFREY SMITH, MIGUEL CASTRO, | : | |
| DREPPERT, and LT. WEBER, | : | |
| Defendants | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2023, upon consideration of

the Defendants' Motion for Summary Judgment on Plaintiff's Remaining Claims, and any

Response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is

**GRANTED**, and all remaining claims against Defendants set forth in Plaintiff's Complaint are

hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
                                                    J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAMON VASQUEZ, | : | NO.  5:20-cv-05116-JMG |
| Plaintiff | : | |
| | : | (Honorable John M. Gallagher) |
| v. | : | |
| | : | *Electronically Filed* |
| BERKS COUNTY, CHRISTIAN | : | |
| LEINBACH, KEVIN BARNHARDT, | : | JURY TRIAL DEMANDED |
| MARK SCOTT, JOHN ADAMS, SCOTT | : | |
| LASH, ERIC WEKNECT, S. GRAFFIUS, | : | |
| C. SADLER, JANINE QUIGLEY, | : | |
| JEFFREY SMITH, MIGUEL CASTRO, | : | |
| DREPPERT, and LT. WEBER, | : | |
| Defendants | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS

Defendants, Berks County, Christian Leinbach, Kevin Barnhardt, Mark Scott, John Adams,

Scott Lash, Eric Weknect, S. Graffius, C. Sadler, Janine Quigley, Jeffrey Smith, Miguel Castro,

Dreppert, and Lt. Weber, respectfully move for summary judgment pursuant to Federal Rule of

Civil Procedure 56(a), requesting this Honorable Court enter the proposed Order for the reasons

set forth in the attached Memorandum of Law, incorporated herein by reference.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**

BY:   */s/Donald L. Carmelite, Esquire*
          Donald L. Carmelite, Esquire
          PA I.D. No. 84730
          Yael L. N. Dadoun, Esquire
          PA I.D. No. 330909
          100 Corporate Center Drive, Suite 201
          Camp Hill, PA 17011
          Telephone: (717) 651-3504; (717) 651-3512
          Facsimile:  (717) 651-3707
          Attorneys for Defendants

Date:  12/5/23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RAMON VASQUEZ, | : | NO.  5:20-cv-05116-JMG |
| Plaintiff | : | |
| | : | (Honorable John M. Gallagher) |
| v. | : | |
| | : | *Electronically Filed* |
| BERKS COUNTY, CHRISTIAN | : | |
| LEINBACH, KEVIN BARNHARDT, | : | JURY TRIAL DEMANDED |
| MARK SCOTT, JOHN ADAMS, SCOTT | : | |
| LASH, ERIC WEKNECT, S. GRAFFIUS, | : | |
| C. SADLER, JANINE QUIGLEY, | : | |
| JEFFREY SMITH, MIGUEL CASTRO, | : | |
| DREPPERT, and LT. WEBER, | : | |
| Defendants | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................................................................ii

I.    STATEMENT OF RELEVANT PROCEDURE....................................................1

II.   STATEMENT OF FACTS ................................................................................2

III.  STATEMENT OF QUESTIONS ......................................................................2

IV.  STANDARD OF REVIEW ..............................................................................2

V.   ARGUMENT .................................................................................................3

    A.   Plaintiff's Claim Against Berks County Should Be Dismissed Because Plaintiff Has Failed To State A Valid Municipal Liability Claim .................................................3

    B.   Plaintiff's Claims Should Be Dismissed Because Plaintiff Has Failed To Demonstrate The Personal Involvement Of The Individual Defendants ........................................4

    C.   Plaintiff's Remaining Eighth Amendment Claims Should Be Dismissed Because Plaintiff Cannot Establish That He Was Subjected To Genuine Privation And Hardship Over An Extended Period Of Time, That Defendants Acted With Deliberate Indifference, Or That The Conditions Of His Confinement Caused His Alleged Injuries...................................7

       1.   Access to recreation.................................................................................9

       2.   Absence of furniture in his cell ...............................................................12

       3.   Clogged air vents...................................................................................13

       4.   Movement of the old furnace pipes ........................................................14

       5.   Insect infestation...................................................................................16

       6.   Leaking toilet........................................................................................17

       7.   Sewage odor .........................................................................................18

       8.   Peeling/cracked paint .............................................................................20

       9.   Mold ....................................................................................................21

VI.  CONCLUSION..............................................................................................22

## TABLE OF AUTHORITIES

**Cases**

Adderly v. Ferrier, 419 Fed. Appx. 135 (3d Cir. 2011).............................................14, 17

Alberti v. Klevenhagen, 790 F.2d 1220 (5th Cir. 1986)..................................................11

Anderson v. Coughlin, 757 F.2d 33 (2d Cir. 1985) ........................................................12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)....................................................3

Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990).......................................4

Barbosa v. McCann, 2009 WL 2913488 (N.D. Ill. Sept. 8, 2009) .................................13

Barndt v. Wenerowicz, 698 Fed. Appx. 673 (3d Cir. 2017 ............................................11

Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001)......................15, 17, 18, 19, 22

Bennett v. Shoemaker, 2023 WL 5434769 (M.D. Pa. Aug. 23, 2023)............................6

Bracey v. Price, 2012 WL 6015727 (W.D. Pa. Dec. 3, 2012)........................................19

Brooks v. Beard, 167 Fed. Appx. 923 (3d Cir. 2006)......................................................5

Brown v. Martin, 2020 WL 419637 (M.D. Pa. Jan. 27, 2020).........................................6

Burk v. Budd, 2019 WL 3765621 (E.D. Pa. Aug. 9, 2019).............................................6

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............................................................3

Chapolini v. City of Philadelphia, 2022 WL 815444 (E.D. Pa. Mar. 17, 2022) ..............14, 16, 19

Chavis v. Fairman, 1995 WL 156599 (7th Cir. April 6, 1995)........................................16

Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir. 1987), cert. denied, 483 U.S. 1052 (1987) .................................................................................................................3

Curtis v. Wetzel, 763 Fed. Appx. 259 (3d Cir. 2019)......................................................5

Dooley v. Wetzel, 957 F.3d 366 (3d Cir. 2020) ..............................................................5

Edwards v. Northampton Cnty., 2016 WL 7654661 (E.D. Pa. Apr. 29, 2016), aff'd, 663 Fed. Appx. 132 (3d Cir. 2016)............................................................................21

Farmer v. Brennan, 511 U.S. 825 (1994) .......................................................................7

Folk v. Prime Care Med., 741 Fed. Appx. 47 (3d Cir. 2018)..........................................5

Ford v. Mercer Cnty. Corr. Ctr., 171 Fed. Appx. 416 (3d Cir. 2006) ..........................7, 20

Forde v. Fischer, 2009 WL 5174650 (D.N.J. Dec. 16, 2009).........................................11

Fortune v. Hamberger, 379 Fed. Appx. 116 (3d Cir. 2010) ......................................14, 19

French v. Owens, 777 F.2d 1250 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986)....................9

Gattis v. Phelps, 344 Fed. Appx. 801 (3d Cir. 2009) .....................................................11

Georges v. Ricci, 2010 WL 606145 (D.N.J. Feb. 18, 2010) ..........................................14

Gonzalez v. Lyons, 1989 WL 66386 (E.D. Pa. June 15, 1989).....................................20

Guess v. Reynolds, 2011 WL 3471533 (D.S.C. Mar. 9, 2011), report and recommendation adopted, 2011 WL 3471054 (D.S.C. Aug. 8, 2011), aff'd, 458 Fed. Appx. 233 (4th Cir. 2011) ................................................................................................................12

Gupton v. City of Philadelphia, 2019 WL 653072 (E.D. Pa. Feb. 14, 2019)...............20

Harris v. Fleming, 839 F.2d 1232 (7th Cir. 1988) .....................................................11, 12

Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992) ....................................................3

Hatchet v. Darby, 2013 WL 490948 (D. Md. Feb. 7, 2013)........................................13

Hedges v. Musco, 204 F.3d 109 (3d Cir. 2000) ...........................................................9

Hudson v. McMillian, 503 U.S. 1 (1992) ...............................................................7, 8

Johnakin v. Berks Cnty. Jail Sys., 2019 WL 4722214 (E.D. Pa. Sept. 25, 2019) ...................17, 21

Johnson v. Beard, 2014 WL 4793905 (M.D. Pa. Sept. 25, 2014) ..............................22

Jordan v. Dep't of Correction, 2023 WL 6541585 (D. Conn. Oct. 6, 2023)................13

Knight v. Armontrout, 878 F.2d 1093 (8th Cir. 1989) ................................................9

Lindsey v. Shaffer, 411 Fed. Appx. 466 (3d Cir. 2011) ........................................14, 19

Lopez v. Robinson, 914 F.2d 486 (4th Cir. 1990) .....................................................14

Los Angeles v. Heller, 475 U.S. 769 (1986) ...............................................................7

Mammana v. Fed. Bureau of Prisons, 934 F.3d 368 (3d Cir. 2019)............................8

Mathews v. Conley, 2022 WL 1286232 (M.D. Ga. Feb. 1, 2022), report and recommendation adopted, 2022 WL 882164 (M.D. Ga. Mar. 24, 2022) ................................................13

McCray v. Wittig, 2014 WL 1607355 (D.N.J. Apr. 24, 2014)....................................15

McTernan v. City of York, PA, 564 F.3d 636 (3d Cir. 2009) ......................................4

Milhouse v. Gee, 2011 WL 3627414 (M.D. Pa. Aug. 17, 2011)................................15

Miskovitch v. Hostoffer, 2010 WL 2404424 (W.D. Pa. May 19, 2010), report and recommendation adopted, 2010 WL 2402934 (W.D. Pa. June 10, 2010)....................10

Mitchell v. Dodrill, 696 F.Supp. 2d 454 (M.D. Pa. 2010).........................................16

Monell v. Department of Social Services, 436 U.S. 658 (1978) ..................................3

Nickles v. Taylor, 2010 WL 1949447 (D.N.J. May 14, 2010)....................................22

Nunez v. Quigley, 2018 WL 6696812 (E.D. Pa. Dec. 20, 2018) ..........................15, 19

Pickett v. Winston, 2020 WL 2814180 (W.D. Va May 29, 2020)...............................21

Pressley v. Beard, 266 Fed. Appx. 216 (3d Cir. 2008)................................................5

Rhodes v. Chapman, 452 U.S. 337 (1981) ..................................................................7

Robertson v. Allied Signal, Inc., 914 F.2d 360 (3d Cir. 1990)....................................3

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) .................................................5

Sanchez v. Pirolli, 2022 WL 2116830 (E.D. Pa. June 13, 2022) .............................5, 6

Schneider v. BCCF, 2022 WL 7127575 (E.D. Pa. Oct. 12, 2022) ...............................6

Smith v. Copeland, 87 F.3d 265 (8th Cir. 1996) .......................................................18

Smith v. Does, 2009 WL 305099 (S.D.W. Va. Feb. 6, 2009) .....................................14

Smith v. United States, 432 Fed. Appx. 113 (3d Cir. 2011)......................................10

Swiderski v. Harmon, 2020 WL 6286720 (E.D. Pa. Oct. 27, 2020) ...............15, 17, 18, 19, 21, 22

Tapp v. Proto, 718 F. Supp. 2d 598 (E.D. Pa. 2010), aff'd, 404 Fed. Appx. 563 (3d Cir. 2010)11, 13

Thomas v. SCI-Graterford, 2014 WL 550555 (E.D. Pa. Feb. 12, 2014).......................16

Thomas v. Tice, 948 F.3d 133 (3d Cir. 2020) .............................................................8

Toomer v. Camden Cnty. Corr. Facility, 2017 WL 2483700 (D.N.J. June 8, 2017) ....................18

Warren v. Prime Care Med. Inc., 431 F.Supp.3d 565 (E.D. Pa. 2019) .............................................9

Watson v. Abington Twp., 478 F.3d 144 (3d Cir. 2007)....................................................................4

Weens v. Lawrence, 2009 WL 2422795 (S.D. Ga. Aug. 6, 2009) ..................................................12

Williams v. Camden Cnty. (Prison) - CCCF Corr. Facility, 2018 WL 4908278 (D.N.J. Oct. 10, 2018)......................................................................................................................................16, 20

Wilson v. Seiter, 501 U.S. 294 (1991)..............................................................................................8

Wishon v. Gammon, 978 F.2d 446 (8th Cir. 1992)..........................................................................9

**Rules**

Fed. R. Civ. P. 56....................................................................................................................................2

Defendants, Berks County, Christian Leinbach ("Leinbach"), Kevin Barnhardt ("Barnhardt"), Mark Scott ("Scott")[1], John Adams ("Adams"), Scott Lash ("Lash"), Eric Weaknecht ("Weaknecht"), Sandra Graffius ("Graffius"), Christine Sadler ("Sadler"), Janine Quigley ("Quigley"), Jeffrey Smith ("Smith"), Miguel Castro ("Castro"), Dorn Reppert ("Reppert")[2], and Lt. Weber ("Weber")(collectively, "Defendants"), by and through their counsel, move the Court pursuant to Federal Rule of Civil Procedure 56 to grant judgment in their favor and dismiss the remaining claims against them with prejudice.  The grounds upon which this motion are based are set forth below.

## I.    STATEMENT OF RELEVANT PROCEDURE

Plaintiff, Ramon Vasquez ("Plaintiff"), initiated this pro se prisoner civil rights case against Defendants on October 13, 2020.  (A1-A21).  On December 9, 2020, this Court dismissed several of Plaintiff's claims, leaving only those challenging the conditions of confinement and access to recreation.  (ECF 7, Memorandum Opinion; ECF 8, Order).

Pursuant to this Court's scheduling orders, discovery was to be completed by August 28, 2023 and motions for summary judgment were to be filed by November 28, 2023.  (ECF 57, June 21, 2023 Order; ECF 62, September 13, 2023 Order).  On August 22, 2023, Defendants took Plaintiff's deposition.  (A206).  Defendants now move to dismiss the remaining Eighth Amendment claims for the reasons that follow.

---

[1] Mark Scott is no longer a Berks County Commissioner or Member of the Berks County Prison Board and was never served with the Summons or Complaint in this matter.  (ECF 13, Summons, p. 14).
[2] Reppert is incorrectly identified in Plaintiff's Complaint as "Dreppert."

## II.     STATEMENT OF FACTS

In compliance with Chamber Policy II(B)(5), Defendants have filed a Statement of Material Facts.  Defendants hereby incorporate by reference the Statement of Material Facts and will discuss the relevant facts, where applicable, in the argument below.

## III.    STATEMENT OF QUESTIONS

1.     Should this Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claim against Berks County because Plaintiff has failed to state a valid municipal liability claim?

2.     Should this Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims against the Individual Defendants because Plaintiff has failed to demonstrate the personal involvement of the Individual Defendants?

3.     Should this Court grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's remaining Eighth Amendment claims because Plaintiff cannot establish that he was subjected to genuine privation and hardship over an extended period of time, that Defendants acted with deliberate indifference, or that the conditions of his confinement caused his alleged injuries?

## IV.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'deposition, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmovant bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial."  Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987), cert. denied, 483 U.S. 1052 (1987).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion.  The requirement is that there is no genuine issue of material fact.  Anderson v. Liberty Lobby, 477 U.S. 242, 247-248 (1986).  The non-moving party cannot rely on unsupported assertions, conclusory allegations, or conjecture or speculation in attempting to survive a summary judgment motion.  See Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-383 n.12 (3d Cir. 1990).  If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential" to his case, and on which he bears the burden of proof at trial, summary judgment is warranted.  Celotex Corp., 477 U.S. at 322.

V.    **ARGUMENT**

   A.    **Plaintiff's Claim Against Berks County Should Be Dismissed Because Plaintiff Has Failed To State A Valid Municipal Liability Claim**

Plaintiff has asserted that Berks County is liable to him for the alleged violation of his Eighth Amendment rights.  It is well-settled that a municipality cannot be held liable for the unconstitutional acts of its employees on a respondeat superior theory.  Monell v. Department of Social Services, 436 U.S. 658 (1978).  Instead, a municipality may be held liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that the violation of his rights was caused by either a policy or a custom of the municipality.  Id.  A government policy or custom can be established in two ways.  Policy is made when a "decisionmaker possess[ing] final authority to establish a

municipal policy with respect to the action" issues an official proclamation, policy, or edict.  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanently and well-settled" as to virtually constitute law. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).  Custom requires proof of knowledge and acquiescence by the decisionmaker.  Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007).

Here, Plaintiff alleges only that Berks County "created a policy or custom both directly and indirectly that lacked sufficient safeguards to protect [Plaintiff] from substandard conditions inside the [Prison]; failed to train their employees to prevent such conduct; failed to properly supervise the employees to prevent such conduct; failed to properly supervise the employees, which created an environment where such misconduct was tolerated and encouraged; and failed to take action when confronted with a pattern of misconduct, which governmental entities condoned and encouraged; constituted the Tort of Negligence Respondeat Superior under Pennsylvania law." (A18 (¶ 43)).  Plaintiff has failed to specify the relevant policy or custom and indicates his claim against Berks County is based on respondeat superior.  As a result, Plaintiff cannot establish liability on behalf of Berks County, and the claims against Berks County should be dismissed.  See McTernan v. City of York, PA, 564 F.3d 636, 657-659 (3d Cir. 2009)("Because McTernan does not adequately plead a custom or policy, or a link between the challenged restriction and a municipal decisionmaker, the restriction cannot 'fairly be said to represent official policy,' warranting the imposition of municipal liability.").

**B.** **Plaintiff's Claims Should Be Dismissed Because Plaintiff Has Failed To Demonstrate The Personal Involvement Of The Individual Defendants**

With regard to Plaintiff's claims against the Individual Defendants, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  See Rode v.

- 4 -

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir.

2020)("Personal involvement requires particular 'allegations of personal direction or of actual

knowledge and acquiescence.'").   However, a prison official's involvement in the grievance

process, alone, is not actionable under § 1983.  See Sanchez v. Pirolli, 2022 WL 2116830, *7 (E.D.

Pa. June 13, 2022)(citing Folk v. Prime Care Med., 741 Fed. Appx. 47, 51 (3d Cir.

2018)("Although some of these defendants were apparently involved in responding to some of

Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus

no basis for liability based on those later grievance reviews."); Curtis v. Wetzel, 763 Fed. Appx.

259, 263 (3d Cir. 2019)("The District Court properly determined that Defendants [Superintendent]

Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances –

lacked the requisite personal involvement [in the conduct at issue].")).

Here, Plaintiff's claims against Quigley, Castro, Smith, and Reppert are based on the

responses he received from them in response to Plaintiff's grievances.  (A8-A9 (¶¶ 11-12), A10

(¶¶ 14-15), A12 (¶¶ 22, 24), A13 (¶ 27), A14-A15 (¶¶ 30, 32-33)).   With regard to Leinbach,

Barnhardt, Adams, Lash, Weaknecht, Graffius, and Sadler, Plaintiff's claims are based on a letter

he wrote regarding the alleged violations of his rights in which he copied the members of the Prison

Board.  (A14 (¶ 29), A84).  However, such allegations do not establish the personal involvement

of the Individual Defendants, and the claims against the Individual Defendants should be

dismissed.  See Pressley v. Beard, 266 Fed. Appx. 216, 218 (3d Cir. 2008)(finding the District

Court properly dismissed defendants who were named only for their supervisory roles in the prison

system based on their failure to take corrective action when grievances or investigations were

referred to them); Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006)(allegations that prison

officials and administrators responded inappropriately to inmate's later-filed grievances do not

establish the involvement of those officials and administrators in the underlying deprivation); Bennett v. Shoemaker, 2023 WL 5434769, *3 (M.D. Pa. Aug. 23, 2023)(plaintiff's allegations that defendant was informed of plaintiff's complaints when his grievance was sent to the prison board, of which the defendant was a member, fell woefully short of pleading personal involvement in the provision of constitutionally deficient medical care); Schneider v. BCCF, 2022 WL 7127575, *3 (E.D. Pa. Oct. 12, 2022)(dismissing claim against defendant who was a member of the prison board where plaintiff claimed he "wrote [a] detailed letter" to the prison board and appealed the denial of his prison grievance "all the way to" the prison board but did not receive a response because such allegations are insufficient to establish involvement in the underlying constitutional violation); Sanchez, 2022 WL 2116830, at *9 (dismissing plaintiff's claims against prison supervisors and members of the prison board because he failed to state a plausible claim where his allegations were that the defendants "failed to act after being put on notice" and his claims were based on the defendants' alleged inaction when the plaintiff filed grievances about conditions such as being denied showers and exercise for several months at a time); Brown v. Martin, 2020 WL 419637, at *3 (M.D. Pa. Jan. 27, 2020)(dismissing claims against defendants whose only alleged conduct was with respect to their denial of the plaintiff's grievance and grievance appeal because participation in the after-the-fact review of a grievance is not sufficient to show the actual knowledge required for personal involvement); Burk v. Budd, 2019 WL 3765621, *4 (E.D. Pa. Aug. 9, 2019)(dismissing claims against defendant based on supervisory liability where "[t]he only fact Burk alleges regarding [the defendant's] personal involvement is that Burk sent letters to [the defendant], but never heard back from him").

**C.** **Plaintiff's Remaining Eighth Amendment Claims Should Be Dismissed Because Plaintiff Cannot Establish That He Was Subjected To Genuine Privation And Hardship Over An Extended Period Of Time, That Defendants Acted With Deliberate Indifference, Or That The Conditions Of His Confinement Caused His Alleged Injuries**

Even if Plaintiff has somehow adequately alleged municipal liability against Berks County and the personal involvement of the Individual Defendants, Plaintiff's remaining Eighth Amendment claims should be dismissed because Plaintiff cannot establish that he was subjected to genuine privation and hardship over an extended period of time, that Defendants acted with deliberate indifference, or that the conditions of his confinement caused his alleged injuries.[3]

Convicted prisoners are protected from "cruel and unusual punishments" by the Eighth Amendment. Ford v. Mercer Cnty. Corr. Ctr., 171 Fed. Appx. 416, 418 (3d Cir. 2006)(citing Rhodes v. Chapman, 452 U.S. 337 (1981)). The Eighth Amendment's restriction of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, the Eighth Amendment does not mandate that prisons be free of discomfort. Hudson v. McMillian, 503 U.S. 1, 9 (1992). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347.

To prevail against prison officials on a claim that an inmate's conditions of confinement violated the Eighth Amendment, the inmate must meet two requirements: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind." Farmer, 511 U.S. at 834. The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities." Thomas v. Tice, 948

---

[3] Without an underlying constitutional violation, there can be no claim under Monell. Los Angeles v. Heller, 475 U.S. 769, 799 (1986).

F.3d 133, 138–39 (3d Cir. 2020)(citing Wilson v. Seiter, 501 U.S. 294, 299 (1991)).  To that end, prison officials must ensure that inmates receive adequate food, clothing, shelter, sanitation, medical care and personal safety.  Farmer, 511 U.S. at 832.  Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement.  Hudson, 503 U.S. at 8-9.  In reviewing conditions of confinement claims, duration of the deprivation is a critical factor in the conditions-of-confinement analysis.  Thomas, 948 F.3d at 139.  Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  **Nothing so amorphous as "overall conditions" can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.**

Wilson, 501 U.S at 304-305 (emphasis added).

The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights.  Thomas, 948 F.3d at 138-139 (citing Wilson, 501 U.S. at 302-303)).  "The...element of deliberate indifference is subjective, not objective...meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019)).  "In other words, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id.

An incarcerated person must also show causation.  Warren v. Prime Care Med. Inc., 431 F.Supp.3d 565, 578 (E.D. Pa. 2019)(citing Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000))("[I]t is axiomatic that [a] § 1983 action, like its state tort analogs, employs the principles of proximate causation.").  An inmate must show a "plausible nexus" or "affirmative link" between the defendant's conduct and the "specific deprivation of constitutional rights at issue."  Id.

Here, Plaintiff complains about the following conditions: access to recreation, absence of furniture in his cell, clogged air vents, movement of the old furnace pipes, insect infestation, leaking toilet, sewage odor, peeling/cracked paint, and mold.  Because Plaintiff's claims do not relate to the deprivation of a single human need, he cannot claim that "overall conditions" rise to the level of cruel and unusual punishment.  Analyzing each of Plaintiff's claim regarding conditions at the Prison demonstrates Plaintiff cannot establish that he was subjected to genuine privation and hardship over an extended period of time, that Defendants acted with deliberate indifference, or that the conditions of his confinement caused his alleged injuries.

### 1.      Access to recreation

First, Plaintiff complains about his access to exercise.  Lack of exercise can only rise to the level of a constitutional violation "[w]here movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened...." French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986).  Even minimal provision of time for exercise and recreation may satisfy constitutional requirements.  See Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992)(forty-five minutes of exercise per week not constitutionally infirm); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989)(holding that denial of outdoor recreation for thirteen days not cruel and unusual punishment).

Here, Plaintiff claims that for an approximately six month period, from mid-October until late April, inmates were offered outside exercise but were not offered proper clothing for the cold weather.  (A224-A226).  However, Plaintiff admits that he could refuse to go outside if he decided it was too cold and that he did so on occasion.  (A225, A227-A228).  As a result, Plaintiff has not demonstrated he was subjected to a substantial risk or that Defendants failed to provide him with "the minimal civilized measure of life's necessities" due to his access to outdoor recreation.  See Smith v. United States, 432 Fed. Appx. 113, 116 (3d Cir. 2011)(rejecting plaintiff's argument that defendants' failure to provide him with adequate cold-weather clothing to wear during outdoor exercise resulted in unconstitutional conditions of confinement because plaintiff was not forced to take his daily exercise and had the option of avoiding inclement weather).

Plaintiff also argues he was denied access to exercise because when it was snowing or raining heavily, the inmates would be offered indoor recreation for one hour but he would be limited to an approximately 15-20 foot long walking area while shackled.  (A225, A227-A229).  Notably, Plaintiff was serving time for aggravated assault committed against his prison cellmate and, therefore, was placed on security status in administrative segregation.  (A6 (¶ 1, 3), A214-A216, A222, A300; ECF 7, Opinion, p. 2 & n.2, n.3); see also Vasquez, 2021 WL 2579974 at *1, 3.  Whenever inmates in administrative segregation are not in their cells, a shower or outdoor recreation yard, they must be restrained, and Plaintiff was placed in shackles in order to maintain a safe and secure environment.  (A32, A40, A302).  Because Plaintiff was on security status and had been convicted of assaulting a prior cellmate, his placement in shackles for the occasional indoor recreation during inclement weather did not deny him a meaningful opportunity to exercise.  See Miskovitch v. Hostoffer, 2010 WL 2404424, *9 (W.D. Pa. May 19, 2010), report and recommendation adopted, 2010 WL 2402934 (W.D. Pa. June 10, 2010)(deprivation orders and

restraining orders which limit a prisoner's recreation to one hour at a time in full restraints does not violate a prisoner's Eighth Amendment rights when security and safety purposes require restraints and a prisoner is able to move around in the recreation area).

It is undisputed that Plaintiff was provided access to recreation either outdoors or indoors during inclement weather.  It is also undisputed that Plaintiff would do push-ups in his cell and could have done other exercises if he chose to.  (A232-A233, A246).  Although Plaintiff would have liked to use the indoor gym, he was informed that it was not designed to accommodate security status inmates.  (A40).  As the facts make clear, Plaintiff was not denied the opportunity to exercise and is only complaining about what he considers to be his inability to "fully exercise." (A225-A226).  However, Plaintiff is a prisoner, and "[i]nmates cannot expect the amenities, conveniences and services of a good hotel." Forde v. Fischer, 2009 WL 5174650, *2 (D.N.J. Dec. 16, 2009)(citing Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)); see also Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration"). Although his exercise conditions were less than ideal, they do not equate to a violation of the Constitution.  See Barndt v. Wenerowicz, 698 Fed. Appx. 673, 677 (3d Cir. 2017)(denial of outdoor recreation and shower for twenty-eight days not a constitutional violation); Gattis v. Phelps, 344 Fed. Appx. 801, 805 (3d Cir. 2009)(affirming plaintiff's alleged harm—that his exercise was limited to three days per week and that he was not guaranteed outdoor exercise at all times—was insufficiently serious to implicate the Eighth Amendment); Tapp v. Proto, 718 F. Supp. 2d 598, 620 (E.D. Pa. 2010), aff'd, 404 Fed. Appx. 563 (3d Cir. 2010)(plaintiff was allowed to exercise at least five out of seven days a week which fails to constitute a significant threat to his well being and fails to amount to punishment, even if prison officials prevented him from

exercising on Wednesdays and Sundays); Harris, 839 F.2d at 1236 (courts have refused to find an

Eighth Amendment violation where an inmate has had significant freedom of movement and space

within his unit or his cell to engage in exercise, even though he is denied access to a gym);

Anderson v. Coughlin, 757 F.2d 33, 36 (2d Cir. 1985)("[N]either an occasional day without

exercise when weather conditions preclude outdoor activity nor reliance on running, calisthenics,

and isometric and aerobic exercises in lieu of games is cruel and unusual punishment.  With

outdoor recreation space provided and opportunity for its daily use assured, the absence of

additional exercise space indoors and of recreational equipment for use in the outdoor space is not

a denial of constitutional rights."); Guess v. Reynolds, 2011 WL 3471533, *9 (D.S.C. Mar. 9,

2011), report and recommendation adopted, 2011 WL 3471054 (D.S.C. Aug. 8, 2011), aff'd, 458

Fed. Appx. 233 (4th Cir. 2011)(no constitutional violation is indicated where the evidence shows

that the plaintiff was offered outside recreation, but on occasion would refuse because he did not

like exercising at night or having to wear shackles when he was outside of his cell); Weens v.

Lawrence, 2009 WL 2422795, *2–3 (S.D. Ga. Aug. 6, 2009)(shackling pre-trial detainee during

exercise did not violate Fourteenth Amendment).

### 2.    Absence of furniture in his cell

Next, Plaintiff complains about the lack of a desk or other furniture in his cell besides the

concrete slab which holds his mattress.  According to Plaintiff, in order to write, he would have to

lie on his stomach or right side with his right arm extended above his head on the ground.  (A244-

A245).  When Plaintiff filed numerous grievances regarding the lack of furniture in his cell, Castro

and Smith responded and told him he was confined in the Unit due to the extremely violent nature

of his misconduct and there was a raised slab in his cell which he could use for his clerical needs.

(A75, A77-A78, A80, A248).  Although Plaintiff admittedly could have used the raised slab in his

cell for his clerical needs, he did not do so simply because he would have to move his mattress and blanket and he liked to be tidy.  (A248-A249).  Plaintiff's lack of a desk does not rise the level of an Eighth Amendment violation.  See Jordan v. Dep't of Correction, 2023 WL 6541585, *7–8 (D. Conn. Oct. 6, 2023)(dismissing plaintiff's claim based on his allegation that the cells in his unit do not have desk and stools and, as a result, he was required to eat and write hunched over a legal box because courts considering similar claims have held that inmates have no constitutional right to a desk and stool); Mathews v. Conley, 2022 WL 1286232, *4 (M.D. Ga. Feb. 1, 2022), report and recommendation adopted, 2022 WL 882164 (M.D. Ga. Mar. 24, 2022)(the denial of a television, desk, and/or stool does not amount to extreme conditions that violate the Eighth Amendment and it is well settled that "the Constitution does not require prisons to be comfortable," and it is not "inhumane" to deny a prisoner access to a television, desk, or stool); Hatchet v. Darby, 2013 WL 490948, *2 (D. Md. Feb. 7, 2013)(holding that failure to provide desk for each inmate was not deprivation of a life necessity but an inconvenience within the purview of expected conditions in prison); Barbosa v. McCann, 2009 WL 2913488, *4 (N.D. Ill. Sept. 8, 2009)("Plaintiff has no constitutional right to have a stool or other furniture on which to sit in his cell.").

### 3.    Clogged air vents

Next, Plaintiff claims the vent in his cell would not blow out air properly because it was stuffed with tissue from whoever lived in the cell before him that he was unable to remove.  (A251-A253).  Notably, the vent was not completely blocked, and Plaintiff has not indicated how he was harmed by the partially clogged vent.  (A254).  Plaintiff's complaint of being confined in a cell with inadequate ventilation is insufficient to state a constitutional violation.  See Tapp, 718 F. Supp. 2d at 620 (finding allegations did not rise to the level of an Eighth Amendment violation where plaintiff claimed the prison was poorly ventilated and prison officials kept the windows

closed in the summer so that in the summertime it could get so hot that inmates would pass out);

Georges v. Ricci, 2010 WL 606145, *4 (D.N.J. Feb. 18, 2010)("[An inmate's] assertion that the

cell block...lacked proper ventilation and was unduly hot fail[ed] to rise to the level of a

Constitutional violation."); Lopez v. Robinson, 914 F.2d 486, 491 (4th Cir. 1990)(finding claims

of inadequate ventilation insufficient to state a viable Eighth Amendment claim); Smith v. Does,

2009 WL 305099, *4 (S.D.W. Va. Feb. 6, 2009)(finding plaintiff failed to state a cognizable Eighth

Amendment claim based upon allegations of inadequate ventilation, no desk or chair, inadequate

space between beds, poor lighting, poor inmate hygiene, and lumpy mattresses); see also Lindsey

v. Shaffer, 411 Fed. Appx. 466, 468 (3d Cir. 2011)(concluding that whether plaintiff suffered harm

was critical to determination of whether unsanitary conditions were unconstitutional); Fortune v.

Hamberger, 379 Fed. Appx. 116, 122 (3d Cir. 2010)(concluding that denial for showers for 15

days did not violate Eighth Amendment when inmate did not "suffer[ ] any harm as a result of the

denial of additional showers"); Chapolini v. City of Philadelphia, 2022 WL 815444, *14 (E.D. Pa.

Mar. 17, 2022)(finding the plaintiff's claim to be implausible where he did not allege how he was

harmed by the alleged unsanitary conditions).

### 4.    Movement of the old furnace pipes

With regard to the old furnace pipe in the cells, Plaintiff claims that they could be moved

off the structure, whereby the inmate above him could urinate or pour feces down the pipe into his

cell which he would have to clean up.  (A258).  This happened to Plaintiff once or twice a week

for approximately two months.  (A259).  Given the emphasis on conditions' time duration as

critical to the constitutional analysis, courts have rejected claims in cases alleging

unconstitutionally unsanitary conditions that were substantially worse than those of which Plaintiff

complains here. See e.g. Adderly v. Ferrier, 419 Fed. Appx. 135, 139 (3d Cir. 2011)(deprivation

of clothing, toiletries, legal mail, pillow, mattress, and shower for seven days was harsh but not a deprivation of the minimal civilized measure of life's necessities); Nunez v. Quigley, 2018 WL 6696812, *3 (E.D. Pa. Dec. 20, 2018)(holding that leaking toilet and sink, mold, rusted bunks with odor, and the smell of dried urine from inmates on the upper tier urinating down the pipes did not state a plausible conditions of confinement claim); McCray v. Wittig, 2014 WL 1607355, *3 (D.N.J. Apr. 24, 2014)(holding that "[b]ecause Plaintiff was confined in the holding cell under deplorable conditions for only two days...without bedding, cleaning supplies, articles of personal hygiene or adequate food...,and he did not suffer any physical injury, his allegations do not show that he was unconstitutionally punished"); Milhouse v. Gee, 2011 WL 3627414, *12 (M.D. Pa. Aug. 17, 2011)(two weeks without a mattress did not violate Eighth Amendment).

In addition, Plaintiff cannot meet the subjective second element of an Eighth Amendment claim. Plaintiff admits that when he would report such incidents to the unit officer, the unit officer would threaten to write up the inmate above Plaintiff unless the inmate stopped. (A259-A260). The inmate would stop for a day or two and then start again. (A259-A260). When Plaintiff filed a grievance he was moved to an upstairs cell. (A261-A262). After he was moved, the problem stopped. (A262). Because Defendants took reasonable measures to remedy the situation, Plaintiff cannot demonstrate that Defendants acted with deliberate indifference. See Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001)(defendant can avert liability by showing that he responded reasonably to the risk, even if the ultimate harm was not avoided); Swiderski v. Harmon, 2020 WL 6286720, *10–11 (E.D. Pa. Oct. 27, 2020)(finding no evidence of deliberate indifference where the record shows prison staff responded to the plaintiff's grievances, inspected his cell in response to his complaints of mold, and medical staff treated him in response to his symptoms he claims resulted from exposure to mold).

5. __Insect infestation__

Plaintiff additionally claims that his cell had an insect infestation.  Specifically, Plaintiff claims water bugs, centipedes and spiders would come out of the vent and old furnace pipes, and he would kill at least one or two each day.  (A264-A265).  Plaintiff alleges he was bit by a centipede a few times, although he does not remember exactly how many.  (A265-A266).  When he was in the downstairs cell, there were "a lot" of ants in the summertime that would crawl on him when he was asleep.  (A266).  Such claims do not rise to the level of an Eighth Amendment violation.  See Chapolini, 2022 WL 815444 at *14 (where plaintiff did not provide sufficient details about the unsanitary conditions, such as the length and extent of his exposure to mice, cockroaches, birds, and smoky conditions, he failed to state a plausible claim because certain unsanitary conditions, while uncomfortable or unpleasant, may not rise to the level of sufficiently serious or punitive in nature to state a plausible claim); Williams v. Camden Cnty. (Prison) - CCCF Corr. Facility, 2018 WL 4908278, *7 (D.N.J. Oct. 10, 2018)(where plaintiff did not offer any facts to demonstrate that the supposed rodent conditions potentially jeopardized his health, he did not show he was subjected to genuine privation and hardship over an extended period of time, but if a corrections official deliberately and sadistically exposed a detainee to seriously infested conditions such as rats, not alleged here, a constitutional cause of action would exist); Thomas v. SCI-Graterford, 2014 WL 550555, *4 (E.D. Pa. Feb. 12, 2014)(finding plaintiff has not demonstrated an unconstitutional threat to his health and safety even though he presented evidence that he was bitten by insects in his cell; Mitchell v. Dodrill, 696 F.Supp. 2d 454, 467 (M.D. Pa. 2010)(infestation with roaches, spiders, worms, gnats, mice and other unknown insects is uncomfortable but not unconstitutional); Chavis v. Fairman, 1995 WL 156599, *4 (7th Cir. April 6, 1995)("Courts have routinely recognized that '[k]eeping vermin under control in jails, prisons and other large institutions is a

monumental task,' and that 'failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation.'").

In addition, Plaintiff cannot meet the subjective second element of an Eighth Amendment claim.  Plaintiff admits that when he raised his concerns about the insects, his cell was inspected but no insects were found.  (A88, A266).  Because Defendants took measures to remedy the situation, Plaintiff cannot demonstrate that Defendants acted with deliberate indifference.  See Beers-Capitol, 256 F.3d at 132 (defendant can avert liability by showing that he responded reasonably to the risk, even if the ultimate harm was not avoided); Swiderski, 2020 WL 6286720 at *10–11 (finding no evidence of deliberate indifference where the record shows prison staff responded to the plaintiff's grievances, inspected his cell in response to his complaints of mold, and medical staff treated him in response to his symptoms he claims resulted from exposure to mold).

### 6.    Leaking toilet

Plaintiff also complains that the toilet in his cell would leak from the bottom requiring him to place a towel underneath it to soak it up.  (A268-A269).  This occurred for approximately one week until maintenance fixed it.  (A51, A268).  Given the short duration and Plaintiff's lack of allegations that he developed any injuries as a result of the leak, Plaintiff's complaint regarding his toilet leaking for one week does not rise to the level of an Eighth Amendment violation.  See Adderly, 419 Fed. Appx. at 139 (deprivation of clothing, toiletries, legal mail, pillow, mattress, and shower for seven days was harsh but not a deprivation of the minimal civilized measure of life's necessities); Johnakin v. Berks Cnty. Jail Sys., 2019 WL 4722214, *3 (E.D. Pa. Sept. 25, 2019)(leaking toilets and mold are not the kinds of sufficiently serious prison conditions that give rise to a constitutional claim); Nunez, 2018 WL 6696812 at *3 (holding that leaking toilet and

sink, mold, rusted bunks with odor, and the smell of dried urine from inmates on the upper tier urinating down the pipes did not state a plausible conditions of confinement claim); Toomer v. Camden Cnty. Corr. Facility, 2017 WL 2483700, *9 (D.N.J. June 8, 2017)(finding plaintiff failed to set forth factual matter to show that her plumbing conditions claim was facially plausible where she did not contend that the non-operational toilet was intended as punishment, that she suffered adversely from it, that there was any significant health risk posed by the conditions she endured, or that she developed physical injuries as a result of the condition); Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996)(holding that an inmate's confinement in a cell for four days with an overflowing toilet, during which time he was "made to endure the stench of [his] own feces and urine," did not rise to the level of a constitutional violation).

In addition, Plaintiff cannot meet the subjective second element of an Eighth Amendment claim. Plaintiff admits that when he raised his concerns about the toilet, the Prison responded and fixed the leak. (A51, A268). Because Defendants took reasonable measures to remedy the situation, Plaintiff cannot demonstrate that Defendants acted with deliberate indifference. See Swiderski, 2020 WL 6286720, at *10–11 (finding no evidence of deliberate indifference where the record shows prison staff responded to the plaintiff's grievances, inspected his cell in response to his complaints of mold, and medical staff treated him in response to his symptoms he claims resulted from exposure to mold); Beers-Capitol, 256 F.3d at 132 (defendant can avert liability by showing that he responded reasonably to the risk, even if the ultimate harm was not avoided).

### 7. Sewage odor

Similarly, Plaintiff complains there would occasionally be a smell of sewage in the Unit from leaking toilets and drains. (A272-A273, A283). Plaintiff has provided no evidence regarding how long or how often the sewage smell would occur and has not alleged that he suffered harm as

- 18 -

a result.  As a result, Plaintiff has not asserted a valid Eighth Amendment claim resulting from the occasional smell of sewage.  See Chapolini, 2022 WL 815444, at *14 (finding plaintiff's claim to be implausible where he did not allege how he was harmed by the alleged unsanitary conditions); Fortune, 379 Fed. Appx. at 122 (concluding that denial for showers for 15 days did not violate Eighth Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); Nunez, 2018 WL 6696812, at *3 (holding that leaking toilet and sink, mold, rusted bunks with odor, and the smell of dried urine from inmates on the upper tier urinating down the pipes did not state a plausible conditions of confinement claim); Lindsey, 411 Fed. Appx. at 468 (concluding that whether plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional); Bracey v. Price, 2012 WL 6015727, *16 (W.D. Pa. Dec. 3, 2012)(finding the alleged conditions did not support an Eighth Amendment claim where the plaintiff complained that the toilet in his cell contained feces and that he was exposed to the smells of feces and urine for three days).

In addition, Plaintiff cannot meet the subjective second element of an Eighth Amendment claim.  Plaintiff admits that when they asked the unit officers to put in a work order, it would be fixed at least until another toilet clogged.  (A284-A285).  Because Defendants took reasonable measures to remedy the situation, Plaintiff cannot demonstrate that Defendants acted with deliberate indifference.  See Beers-Capitol, 256 F.3d at 132 (defendant can avert liability by showing that he responded reasonably to the risk, even if the ultimate harm was not avoided); Swiderski, 2020 WL 6286720, at *10–11 (finding no evidence of deliberate indifference where the record shows prison staff responded to the plaintiff's grievances, inspected his cell in response to his complaints of mold, and medical staff treated him in response to his symptoms he claims resulted from exposure to mold).

### 8.      Peeling/cracked paint

Additionally, Plaintiff complains about the paint on the walls of his cell which he claims was cracked and had "bubbles" in it.  (A275-A276).  When he would wipe it, the bubbles would turn into "dust" and the cracked paint would break off into "chips."  (A275-A277).  While Plaintiff believes the paint had lead in it, Plaintiff was informed that, while the paint was not cosmetically appealing to look at, the dust is called efflorescence which exists naturally as part of the masonry process and when moisture is present, it liquefies and comes to the surface where it re-crystallizes, but is not harmful.  (A55, A57, A88, A278-A279).  Plaintiff has not pointed to any evidence demonstrating that the peeling paint actually did contain lead, and absent scientific or other quantitative and qualitative evidence, a jury could only speculate that Plaintiff was subjected to an unreasonable, indecent, and uncivilized risk of harm in violation of the Eighth Amendment.  See Ford, 171 Fed. Appx. at 421.  Nevertheless, even if the paint did possibly contain some lead, courts have found that such conditions do not rise to an Eighth Amendment violation.  See Gupton v. City of Philadelphia, 2019 WL 653072, *3 (E.D. Pa. Feb. 14, 2019)(where plaintiff alleged there were roaches and rats in his cell, paint chips falling from the wall onto his head, leaky pipes, mold in the showers, and asbestos, and alleged one insect bite and few instances of headaches, dizziness, and blurred vision, plaintiff's claims were dismissed because allegations did not present a sufficient showing that any of the conditions described by plaintiff impacted him to a degree constituting cruel and unusual punishment); Gonzalez v. Lyons, 1989 WL 66386, *1 (E.D. Pa. June 15, 1989)(dismissing a complaint alleging exposure to asbestos, lead poisoning from paint, and broken showers); Williams v. Lyons, 1989 WL 32764, *1 (E.D. Pa. 1989)(holding that there was no Eighth Amendment violation where plaintiff alleged "exposure to asbestos, lead poisoning from paint, rats and bugs").

In addition, although Plaintiff believes his exposure to the paint caused him to have respiratory issues, blood in his saliva, and headaches, he received medication to treat his symptoms, and no doctor has told him he has long-term issues from the paint.  (A275-A278). Plaintiff's mere assertions that an alleged exposure to lead paint caused injury is not sufficient, and absent expert testimony or any evidence it cannot be inferred that conditions in his cell caused Plaintiff harm.  See Swiderski, 2020 WL 6286720 at *11 (holding the record did not reasonably support a finding of causation where there was no evidence plaintiff's alleged exposure to mold caused him harm aside from his own assertions); Edwards v. Northampton Cnty., 2016 WL 7654661, *5 (E.D. Pa. Apr. 29, 2016), aff'd, 663 Fed. Appx. 132 (3d Cir. 2016)("Court is unable to infer, absent expert testimony, that the conditions of [plaintiff inmate's] cell caused his MRSA infection").

### 9.    Mold

Finally, Plaintiff complains about the existence of mold in the Prison.  According to Plaintiff, there was blotches of mold in his cell on the wall behind the old furnace pipe.  (A279-A280).  There was also mold in the showers that was approximately 6-8 inches.  (A279, A283, A285-A286).  Plaintiff has not alleged that the mold caused him any harm.  As a result, Plaintiff has not stated a viable Eighth Amendment claim related to the alleged mold at the Prison.  See Swiderski, 2020 WL 6286720, at *1 (an incarcerated man alleging toxic black mold in his cell and shower facilities must do more than conclude the alleged mold harmed his health and the possible existence of unsanitary conditions is not enough, by itself, to proceed under the Eighth Amendment); Pickett v. Winston, 2020 WL 2814180, * 2 (W.D. Va May 29, 2020)(dismissing Eighth Amendment claim where plaintiff alleged prison had mold in the ceiling, ventilation, and showers); Johnakin, 2019 WL 4722214, at *3 (leaking toilets and mold are not the kinds of

sufficiently serious prison conditions that give rise to a constitutional claim); Johnson v. Beard, 2014 WL 4793905, *7 (M.D. Pa. Sept. 25, 2014)(the mere presence of mold does not indicate an objectively serious deprivation and the plaintiff failed to state a claim based on allegations that his cell had foul odors, mold, and crumbling paint); Nickles v. Taylor, 2010 WL 1949447, *5 (D.N.J. May 14, 2010)(plaintiff presents no facts to suggest that the black mold allegedly identified in the shower (which CCCF staff attempted to remove with bleach), while unpleasant, posed any serious risk to him and so its presence cannot support an Eighth Amendment violation).

Even if Plaintiff can meet the objective element of the Eighth Amendment, he cannot establish the second element. Plaintiff admits he was given cleaning supplies, and when he cleaned the mold, it would go away for a bit and then come back. (A256-A257, A280-A281). He also indicated that when the mold in the shower was cleaned, it would go away before coming back. (A286). In addition, when he complained about mold in his cell, his cell was inspected and no mold was found. (A49). Because Defendants took reasonable measures to remedy the situation, Plaintiff cannot demonstrate that Defendants acted with deliberate indifference. See Swiderski, 2020 WL 6286720, at *10–11 (finding no evidence of deliberate indifference where the record shows prison staff responded to the plaintiff's grievances, inspected his cell in response to his complaints of mold, and medical staff treated him in response to his symptoms he claims resulted from exposure to mold); Beers-Capitol, 256 F.3d at 132 (defendant can avert liability by showing that he responded reasonably to the risk, even if the ultimate harm was not avoided).

## VI.   **CONCLUSION**

Based upon the foregoing, Defendants respectfully request that their Motion for Summary Judgment on Plaintiff's Remaining Claims be granted and that an Order be entered dismissing all remaining claims against them.

Respectfully submitted,

**MARSHALL DENNEHEY, P.C.**


BY:    */s/Donald L. Carmelite, Esquire*
             Donald L. Carmelite, Esquire
             PA I.D. No. 84730
             Yael L. N. Dadoun, Esquire
             PA I.D. No. 330909
             100 Corporate Center Drive, Suite 201
             Camp Hill, PA 17011
             Telephone: (717) 651-3504; (717) 651-3512
             Facsimile:  (717) 651-3707
             Attorneys for Defendants


Date:   12/5/23

<u>**CERTIFICATE OF SERVICE**</u>

I, Michele E. Neff, an employee of Marshall Dennehey, P.C., do hereby certify that on this 5th day of December, 2023, I served a copy of the foregoing document, and in the manner indicated below, which service satisfies the requirements of the Federal Rules of Civil Procedure, by depositing a copy of same in the United States Mail, first-class postage prepaid, addressed as follows:

Smart Communications/PA DOC
Ramon Vasquez (MG9685)
SCI Huntingdon
P.O. Box 33028
St. Petersburg, FL  33733
*Pro Se Plaintiff*


*/s/ Michele E. Neff*
Michele E. Neff, Legal Admin. Asst. to
Donald L. Carmelite, Esquire and
Yael L. N. Dadoun, Esquire