IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMON VASQUEZ, <br>     Plaintiff, <br><br> v. <br><br> BERKS COUNTY, *et al.,* <br>     Defendants. | Civil No. 5:20-cv-05116-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                             **August 21, 2024**

  Pro Se Plaintiff Ramon Vasquez ("Plaintiff") brings this prisoner civil rights claim pursuant to 42 U.S.C.S § 1983 against Defendants Berks County and several other individual defendants. Presently, before the Court is Defendants' Motion for Summary Judgement. ECF No. 72. Defendant Berks County contends that Plaintiff cannot show municipal liability in accordance with *Monell v. Dep't of Soc. Servs. of City of New York*. *Id*. Further, the individual defendants argue that Plaintiff cannot show their personal involvement in the alleged misconduct that led to Plaintiff's injury. *Id*. Plaintiff fails to adequately identify an unconstitutional policy or custom and cannot show the personal direction, knowledge, and acquiescence of the individual defendants in the alleged misconduct. For these reasons, the Court grants Defendants' Motion.

**I.  BACKGROUND**

  **A.  Procedural Background**

  On October 13, 2020, Plaintiff initiated this prisoner civil rights case, alleging Defendants are liable for violations of his rights under the Eighth Amendment. Then, on December 9, 2020,

1

this Court dismissed several of Plaintiff's claims for failure to state a claim. ECF Nos. 7 and 8. Included in the claims dismissed were Plaintiff's due process claims based on his security status and food restrictions. ECF No. 8. Plaintiff was left able to proceed on the remaining Eighth Amendment Claims, challenging the conditions of confinement and access to recreation. *Id*.

Plaintiff and Defendants exchanged discovery, and then on December 5, 2023, Defendants filed a motion for summary judgement on Plaintiff's remaining claims. ECF Nos. 72 and 73. Next, on February 7, 2024, Plaintiff filed his response. ECF No. 85. On February 22, 2024, Defendants filed their reply. ECF No. 89. Finally, Plaintiff filed his sur-reply on April 4, 2024. ECF No. 96. Accordingly, Defendants' Motion for Summary Judgment is ripe for adjudication.

**B.     Factual Background[1]**

Plaintiff is a prisoner currently residing in SCI Huntingdon, located in Huntingdon, Pennsylvania. A205, A235. Between 2018 and 2020, Plaintiff was located at the Berks County jail, where he was housed in the disciplinary segregation unit ("Delta Unit") and held under security status on the first floor's Behavioral Adjustment Unit. A6, A26, A266. Defendant Quigley is the Warden of the Berks County Jail (the "Prison"), and Defendant Smith is the Chief Deputy Warden. A5. Defendants Leinbach, Barnhardt, Adams, Lash, Weaknecht, Graffius, and Sadler are members of the Berks County Prison Board (the "Prison Board").[2] A4. Further, Defendants Castro

---

[1] The following facts are undisputed or taken in the light most favorable to Plaintiff, the nonmovants. Citations contained herein will be to the page numbers of the Appendix to Defendants' Statement of Undisputed Material Facts (ECF No. 73), or with regard to identifying documents on the docket, those documents will be identified by the ECF number.

[2] Defendant Mark Scott is no longer a Berks County Commissioner or Member of the Berks County Prison Board. ECF No. 73 at 1. Also, he was not served with the Summons or Complaint in this case. *See* ECF No. 13 at 14.

and Weber are employees and grievance coordinators of the Prison, and Defendant Reppert[3] oversees the maintenance department at the Prison. A4, A5.

During the winter months of Plaintiff's time in Delta Unit, he was permitted outdoor exercise and recreation. A262. Plaintiff occasionally chose to forgo his permitted outdoor exercise, stating that the clothing he was provided could not combat the cold temperatures. A269. When inclement weather occurred, Plaintiff and other inmates were offered indoor recreation as an alternative. A225, A227-A229. Because of his security status, however, Plaintiff could only participate in indoor recreation activity while being shackled. A225, A227-A229, A269-270. Inside his cell, Plaintiff would often do push-ups, but the cell was not spacious enough for many other exercises, and the lack of ventilation made conditions for him unbreathable. A287.

Plaintiff's cell consisted of a raised slab that he could use for clerical needs through laying on his right side with his right arm extended above his head and supporting his body. A321-A323. In addition, Plaintiff's cell contained a concrete slab covered by his mattress. A334. Believing that this chosen writing position had been worsening his previous shoulder and back injury, Plaintiff brought forth concerns to Defendants Weber and Castro, who informed him that the elevated, concrete slab in which his mattress sat was adequate for his clerical needs. A331-A332. It was possible for Plaintiff to move his mattress to sit on the floor; however, Plaintiff's desire to remain tidy prevented him from doing this. A334-A347. While Plaintiff believed his increased pain was due to lack of exercise and the consistent writing done in this position, no medical examiner or professional verified this belief. A323-A329.

Also in Plaintiff's cell was a partially clogged ceiling vent with holes that had been stuffed

---

[3] Defendants clarify that Reppert is incorrectly identified in Plaintiff's Complaint as "Dreppert." ECF No. 73 at 1. The Court shall utilize the spelling identified by Defendants.

with tissue by a previous inmate. A348-351. Through the grievance process, Plaintiff informed Defendants Reppert, Quigley, Smith, Castro, and Weber that the vents were clogged, and through their grievance response, Defendants stated that the vents would be cleaned. A88. To clean the clogged vents, Plaintiff tried to use his fingernails, because he was not given any cleaning supplies. A352.

In the cell located above Plaintiff, the old furnace pipes could be moved off their structure, revealing a space overhead Plaintiff's cell. A361-A363. When Plaintiff had disagreements with the inmate located above - which occurred roughly once or twice a week - Plaintiff alleged that the inmate would remove the furnace pipe to urinate and push feces down the opening. A258, A259. Plaintiff stated that he informed a unit officer of these occurrences over the course of years, but the accused inmates were only threatened to be written up. A80, A259-A260. Further, Plaintiff filed a grievance to which Defendant Quigley responded. A88, A261-262. In his response Defendant Quigley indicated that upon inspection no feces or urine were found in the cell. *Id*. Nevertheless, Plaintiff was moved to an above cell and the problem stopped. *Id*.

The toilet in Plaintiff's cell leaked for one week before Defendants were made aware through the grievance process and maintenance fixed it. A51, A268-A269. Additionally, Plaintiff complained of a sewer smell in the hallways and would inform Defendants every time a toilet would leak. A272-A273, A283. The leaking toilets would be repaired, but it would not take long after until another toilet became clogged. A284-A285.

Plaintiff filed a grievance contending that the paint in his cell contained lead that was making him sick with respiratory issues, blood in his saliva, and headaches, and he received medication to treat his issues. A275-A278, CF 85, p. 24-26. Defendants responded to Plaintiff's grievance by informing Plaintiff that the dust is called "efflorescence" and is not harmful. A55,

A57, A278-A279. No experts testified to support Plaintiff's claims of lead, nor did any medical professional diagnose Plaintiff with long-term issues. A278.

Finally, Plaintiff complained that there was mold in his cell and showers that was approximately 6-9 inches in size. A279, A283, A285-A286. After filing a grievance, Defendant Reppert responded by informing Plaintiff that his cell was inspected, but no mold had been found. A49. Plaintiff insists that he would clean the mold, but it would regularly return. A280-A281.

## II. STANDARD

### Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

### III.  ANALYSIS

#### A.  **Plaintiff fails to satisfy *Monell* Liability.**

Plaintiff contends that the county is liable under 42 U.S.C.S § 1983. Civil liability is imposed on any person who deprives another of "any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C.S § 1983. However, municipalities and other local government bodies are "persons" within the meaning of § 1983 but cannot be held liable solely on a respondeat superior basis. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 689 (1978). As a result, municipalities can only be held liable for deprivation of these rights when the alleged violation resulted from a policy or custom that exhibits deliberate indifference to the rights of citizens. *Id*. at 694-95. Accordingly, section 1983 liability attaches to a municipality only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*.

In sum, a government policy or custom must be established to show municipal liability. *McTernan v. City of York*, 564 F.3d 636, 657-58 (3d Cir. 2009). Thus, *Monell* creates a "two-path track" to municipal liability. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 98.)) To satisfy this standard, Plaintiff must specify exactly what the policy or custom was that caused the injury. *See Phillips v. County of Allegheny*, 515 F.3d. 224, 232 (3d. Cir. 2008).

First, a policy can be identified when it is shown that "a decision maker possessing final authority to establish municipal policy with respect to the action" has "issue[d] an official

proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Plaintiff does not properly identify a specific policy which invokes municipal liability.

Here, Plaintiff alleges that Berks County:

> created a policy or custom both directly and indirectly that lacked sufficient safeguards to protect [Plaintiff] from substandard conditions inside the [Prison]; failed to train their employees to prevent such conduct; failed to properly supervise the employees to prevent such conduct; failed to properly supervise the employees, which created an environment where such misconduct was tolerated and encouraged; and failed to take action when confronted with a pattern of misconduct, which governmental entities condoned and encouraged; constituted the Tort of Negligence Respondeat Superior under Pennsylvania law.

Am. Compl. 18, ECF No. 2.

In this case, Plaintiff attempts to demonstrate that Berks County enforced a policy or custom by authorization, acquiescence, or deliberate indifference by using news articles as evidence. However, these articles are largely inadmissible as double hearsay because the reporters were relying on statements from individuals. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d. Cir. 2009) (finding hearsay statements that would be inadmissible at trial may not be considered for summary judgment); *see also Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 691 n.9 (E.D. Pa. 2017), aff'd, 726 Fed. Appx. 118 (3d Cir. 2018) (finding that because Plaintiff relied on statements made by an individual to a newspaper reporter and then published in an article, the evidence was double hearsay and inadmissible at summary judgement). Plaintiff must be able to "demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593 (M.D. Pa. 2014) (citing *Robinson v. Hartzell Propeller, Inc.*, 326 F.Supp.2d 631, 645 (E.D. Pa. 2004)). He has failed to do so here. Additionally, even if the articles that Plaintiff contends supports his position were admissible, the articles are still insufficient to demonstrate that a Berks County policy or custom caused him harm. At most, these articles show that Berks County was aware of

the deterioration of the prison and was developing options to fix it; it does not suggest that they acquiesced to the problem. *See* A100-102.

Next, Plaintiff points towards 61 Pa. C.S. §§ 1724 and 1725 to establish breach of duties by Defendants. ECF No. 85 at 5-6, 8. These subchapters establish the powers and duties and the rules and regulations of the county jail's board. *Id*. Further, they lay out the rules of inspections, operations consistent with law, living conditions, and investigations within the jail. *Id*. However, appearing in subchapter B, both 1724 and 1725 apply only to counties of the second class; Berks County is a county of the third class. *See Cnty. of Berks v. Int'l Bhd. of Teamsters Loc. Union* No. 429, 2008 WL 9398635, at *1 (Pa. Commw. Ct. 2008). For counties of the third class, Subchapter C (Board of Inspectors) applies. *See* 61 Pa. C.S. § 1731(a)(1). Strikingly, the provisions found in Subchapter C do not parallel those in Subchapter B in respect to living conditions, inspections, and all other alleged violations by Plaintiff. *See* 61 Pa. C.S. §§ 1731-1736. Therefore, the duties which Plaintiff specifies are not applicable to Berks County, and he fails to adequately specify an unconstitutional policy.

Although Plaintiff fails to state a policy, he may still be able to establish municipal liability through identifying an unconstitutional custom. *See McTernan*, 564 F.3d at 657-58. A custom can be identified when it is shown "that a given course of conduct… is so well settled and permanent as virtually to constitute law." *Andrews*, 895 F.2d at 1480. Furthermore, a custom "requires proof of knowledge and acquiescence by the decisionmaker." *McTernan,* 564 F.3d 636 at 658. Plaintiffs can adequately show an inference of acquiescence by demonstrating that "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

In this case, Plaintiff strongly argues that an inadequate exercise custom was present. He states that him and other inmates were "denied proper clothing to face harsh weather during wintery months." ECF No. 85 at 9. He further asserts inadequate living conditions within the Berks County Jail System ("B.C.J.S."). ECF No. 2 and 2-1. Plaintiff largely attempts to show knowledge and acquiescence regarding these alleged unconstitutional customs through news articles (ECF No. 85 at 10, 12-13, 15), which, as discussed above, are largely inadmissible and do not support the establishment of a custom. *See Giuliani* 238 F. Supp. 3d at 691, aff'd, 726 Fed. Appx. 118. Indeed, these articles support the notion that officials were aware of the problems in the facilities and were evaluating ways to fix the problem even if the solution would require a new building. ECF No. 85 at 10, 12-13, 15.

At best, Plaintiff comes close to showing knowledge or acquiescence of his alleged custom through the response letter to his original notice which was filed with the Office of County Inspection and Services. *See* ECF No. 73 at A196. The response letter acknowledges that the "Prison Board" is responsible for investigating the allegations made and communicates that the response and correspondence would be forwarded to both Defendants Barnhardt and Quigley. *Id*. While this may show that Defendants Barnhardt and Quigley had knowledge of the alleged custom, Plaintiff does not point to any evidence establishing a failure to take precautions against future issues leading to injury. Also, Plaintiff continuously asserts that there are other factors outside of letters and grievances to show other personal involvement, he fails to cite to evidence backing this claim. For these reasons, Plaintiff fails to adequately specify an unconstitutional custom.

Overall, Plaintiff cannot properly identify either an unconstitutional policy or custom breached by Defendants, and as a result, he has failed to state a valid municipal claim against Berks County.

### B. Plaintiff fails to establish personal involvement of any individual defendant.

Plaintiff further contends that the individual defendants are liable under 42 U.S.C.S § 1983. Plaintiff fails, however, to adequately plead the personal involvement of each defendant needed to survive summary judgement. *See Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). It's long been held that personal involvement in the alleged wrongs is needed to establish liability, and liability cannot be predicated solely on the operation of respondeat superior. *Id.*; *Jutrowski v. Twp. Of Riverdale*, 904 F.3d. 280, 285 (3d. Cir. 2018); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Rhode*, 845 F.2d at 1207. Further, allegations of participation or actual knowledge and acquiescence must be made with "appropriate particularity." *Id.*

Moreover, it is well-established that, alone, a prison official's involvement in the grievance process cannot be used to show personal involvement pursuant to § 1983. *Folk v. Prime Care Med.*, 741 Fed. Appx. 47, 51 (3d Cir. 2018). The filing of a grievance, participation in review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (finding the District Court was proper in dismissing the defendants who were sued only because of their failure to take corrective action when grievances were referred to them). Rather, an individual must be linked to the underlying incidents in other ways. *Folk*, 741 Fed. Appx. at 51.

Here, Plaintiff failed to show the personal involvement of Defendants in his alleged injury. First, Plaintiff points towards multiple grievance letters written to the prison board to establish the personal liability of those involved. *See* ECF No. 73 at A8-A9, A10, A12, A13, A14-A15. Particularly, Plaintiff argues that he had requested the board to take steps to correct the problem

10

and their failure to do so constitutes personal involvement. *Id*. However in *Rhode*, the plaintiff attempted to use the grievances she had filed with the office of administration as grounds to show actual knowledge in her civil rights case, but the court held that these were "simply insufficient" to satisfy the element of personal involvement. *Rhode,* 845 F.2d at 1207. Then in the recent case of *Dooly*, the court further concluded that filed grievances and responses thereto are insufficient to show personal involvement. *Dooly*, 957 F.3d at 372. Similarly, here Plaintiff relies primarily on numerous grievance letters, responses, and documents copied to Defendants as his basis. As supported by binding precedent, this reliance alone is simply insufficient to show personal involvement.

Plaintiff further contends that there are a multitude of factors outside of the scope of the grievance process to show the personal involvement of Defendants. First, Plaintiff points towards published news articles; however, as explained above, his references to these articles are in large part inadmissible, and these articles do not show the individual involvement of the defendants. Therefore, the articles cannot be used to establish personal involvement.

Second, Plaintiff identifies Defendants as either members of the Institutional Classification Committee ("ICC") or as supervisors with "decision making authority" over monthly hearings. ECF No. 85 at 11. He claims that these individuals were each made aware of his concerns with the exercise policies. ECF No. 85 at 17. Despite these claims, however, the only Defendant involved in the referenced ICC hearing and decision-making process was Defendant Weber. ECF No. 2-1, at 18.

At this hearing, Plaintiff asked how he could "work his way off" security status and stated that he had shoulder and back pain due to lack of exercise. *Id*. at 47. He further inquired over whether he could use the gym for recreation. *Id*. The purpose of the ICC as outlined in the Berks

County Jail System's Standard Operating Procedures is to review inmate security status. EFC No. 73 at 484. The ICC responded to Plaintiff by deciding there was no change in his status and informed Plaintiff that a review of his status would be conducted every month. *Id*. Pursuant to the ICC's decision, Plaintiff was made aware that the indoor gym was not designed to accommodate individuals on security status. ECF No. 73 at 4. Because the ICC properly responded to Plaintiffs inquiry and this Court already dismissed Plaintiff's claim regarding his security status, this is not enough to show the requisite personal involvement of the Defendants towards an alleged injury. *See Pressley*, 266 F. App'x at 218-19. (finding that the confiscation of a prisoner's religious materials, which frustrated his free exercise of religion, was justified based on his security status).

Additionally, Plaintiff contends that Defendants did a walkthrough of Delta Unit where they were made aware of the conditions and promised that renovations would begin to take place. ECF No. 85 at 12. In making this contention, the crux of Plaintiff's reliance still stem from letters and grievances which cannot establish how each defendant was personally involved in the deterioration of the prison. ECF No. 85 at 17-18 (referring to A84, A88, A93, A98); *see Curtis v. Wetzel*, 763 Fed. Appx. 259, 263 (3d Cir. 2019) (determining that Defendants - who participated only in the denial of Plaintiff's grievances – lacked the requisite personal involvement).

Because Plaintiff is unable to adequately identify evidence that shows how Defendants participated in or had actual knowledge and acquiescence of the cause of Plaintiff's alleged injury, Plaintiff cannot establish the personal involvement needed to survive summary judgement. Therefore, the final part of the inquiry – determining whether Plaintiff's alleged conditions violated the Eighth Amendment – need not be addressed by the court.

### III. CONCLUSION

Defendants' instant Motion for Summary judgment is granted, because Plaintiff both failed

to establish municipal liability and show the personal involvement of Defendants needed to invoke a civil rights claim under 42 U.S.C.S § 1983.

                                                            BY THE COURT:

                                                    */s/ John M. Gallagher*
                                                    JOHN M. GALLAGHER
                                                    United States District Court Judge